## PEOPLE *v.* LUNDBERG.

1. CRIMINAL LAW—COMPETENCE OF COURT-APPOINTED DEFENSE COUNSEL.

     The competence of court-appointed defense counsel is not to be determined by the frequency of his cross-examination of the people's witnesses and by the frequency of his objections to leading questions and hearsay testimony, it being necessary to have regard for the posture of defense assumed at the trial, and the elements of the crime conceded and those disputed.

2. VENUE—MOTION BEFORE TRIAL.

     Normally, challenge to venue is raised by motion before trial.

3. CRIMINAL LAW—COMPETENCE OF COURT-APPOINTED DEFENSE COUNSEL.

     Incompetence of court-appointed defense counsel in prosecution for first-degree murder *held*, not inferable under record presented, where it appears defendant's counsel did cross-examine any witness who testified with reference to either of the disputed issues of degree of murder or venue.

4. SAME—COMPETENCE OF COURT-APPOINTED DEFENSE COUNSEL.

     Incompetence of court-appointed defense counsel in nonjury prosecution of defendant for first-degree murder will not be inferred from his failure to object to hearsay testimony of facts that were not disputed.

5. SAME—COMPETENCE OF COURT-APPOINTED DEFENSE COUNSEL.

     Court-appointed defense counsel in nonjury prosecution of defendant for first-degree murder *held*, not incompetent because

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4, 5, 6] Incompetency, negligence or the like of counsel as ground for new trial or reversal in criminal cases.   24 ALR 1025, 64 ALR 436.
[2] 14 Am Jur, Criminal Law § 232 *et seq.*
[7] 14 Am Jur, Criminal Law § 235.
[8] 20 Am Jur, Evidence § 317.
[9] 20 Am Jur, Evidence §§ 559–561.

of his last-minute effort to prove lack of premeditation by calling prosecuting attorney as a witness, where the testimony against defendant up to that point of the trial was overwhelming and there was no other way of proving defendant's version of the assault without putting defendant on the stand.

6. SAME—COURT-APPOINTED DEFENSE COUNSEL—FAITHFULNESS.

Court-appointed defense counsel's disclosure to the prosecuting attorney, before trial in prosecution for first-degree murder, that the court's jurisdiction to hear the case was questioned *held*, not to evince infidelity to defendant.

7. HOMICIDE—VENUE—STATUTES.

Whether fatal assault involved in prosecution in first-degree murder occurred in Schoolcraft county or .2 of a mile over the county line in Alger county, Schoolcraft county could properly prosecute defendant in view of statute providing that "any offense committed on the boundary line of 2 counties, or within 100 rods of the dividing line between them * * * may be prosecuted and punished in either county" (CL 1948, § 762.3).

8. SAME—NONJURY TRIAL—EVIDENCE OF OTHER CRIMES.

Erroneous admission of evidence of several crimes of breaking and entering, committed after fatal assault by defendant in nonjury prosecution for first-degree murder, but not connected with the murder, *held*, not reversible error, where evidence of defendant's guilt was such that Supreme Court believes result would not have been different had the testimony been excluded.

9. SAME—PRETRIAL ADMISSIONS OF GUILT—SAVING QUESTION FOR REVIEW.

Reversal of judgment of conviction of first-degree murder in a nonjury prosecution will not be ordered because of reception in evidence of police officer's testimony of defendant's admissions of guilt made after arrest and before arraignment, where defendant did not object to the introduction of such admissions at the trial, since there was no occasion for the trial court to make a ruling on the matter or to take proofs and to consider whether defendant's arrest and detention were illegal.

Appeal from Schoolcraft; Nebel (Richard W.), J. Submitted April 13, 1961. (Docket No. 72, Calendar No. 48,949.) Decided November 30, 1961. Rehearing denied March 15, 1962.

Leonard H. Lundberg was convicted of murder in the first degree. Affirmed.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *Perry A. Maynard,* Assistant Attorney General, and *William J. Sheahan,* Prosecuting Attorney, for the people.

*Leonard H. Lundberg, in propria persona.*

Souris, J. Having waived trial by jury,[*] defendant was tried and convicted by the circuit court in Schoolcraft county of the first-degree murder of a 22-year-old woman schoolteacher. On leave granted by this Court, defendant appeals, claiming that his court-appointed counsel was incompetent and unfaithful; that the trial court was without jurisdiction to try him because the homicide occurred in the adjoining county; and that the court committed prejudicial error by receiving evidence of unrelated crimes, hearsay testimony, and testimony of defendant's confessional statements made to the police which he claims were involuntary or otherwise inadmissible because extracted from him during a period of illegal detention.

Defendant bases his allegation of defense counsel's incompetence upon the apparent belief that competence of counsel can be and should be measured by the frequency of his cross-examination of the people's witnesses and by the frequency of his objections to leading questions and hearsay testimony. There is no such correlation, of course. At best, competence of defense counsel is a quality extremely elusive of valid measurement. If it is required to be tested by an appellate court far removed from the climate of the trial arena, judgment cannot be based on the number of witnesses cross-examined and the

[*] See CL 1948, § 763.3 (Stat Ann 1954 Rev § 28.856).—Reporter.

number of objections made. At the very least, re-gard must be had for the posture of defense assumed at the trial, the elements of the crime conceded and those disputed.

The record in this case discloses that defense counsel concentrated upon 2 issues. First, defendant did not dispute commission of the homicide, nor does he deny guilt of homicide on this appeal (although he would have us exclude from evidence his admissions of guilt). He did dispute its degree, contending that the homicide was committed in anger and without the premeditation essential for guilt of murder in the first degree. Second, defendant disputed the venue of the action. Although normally challenge to venue is raised by motion before trial, there is nothing in this record from which we can say with any certainty that venue should have been challenged before trial. What is apparent from this record, however, is that the people put in substantially more testimony re-garding the location of the fatal assault so as to establish venue than is normally required for this purpose.

None of the witnesses offered by the people to establish the *corpus delicti* or other elements of proof not relevant to either the degree of defendant's guilt or the venue of the action was cross-examined by defense counsel. However, significantly, whenever a witness testified with reference to either of the 2 disputed issues, defense counsel did cross-examine. We cannot infer incompetence from these facts thus disclosed by the record.

Another ground upon which defendant relies in support of his claim that defense counsel was incom-petent is his failure to object to leading questions, hearsay testimony, and other objectionable evidence. Here again, we cannot measure competence by a quantitative analysis of the theoretically objection-able offers of proof to which no objection was made.

We have carefully reviewed this record and conclude that the leading questions and hearsay testimony, for the most part, related to matters not relevant to the disputed issues of premeditation and venue. We do not wish to suggest that we condone the use of leading questions and hearsay testimony under such circumstances. We are certain that had objections been made to them, the trial court would have sustained the objections and the prosecutor would have had to forego the use of leading questions and probably would have introduced direct testimony of the facts sought to be established by hearsay. However, a jury trial had been waived and trial was to the court. Certainly it was within the broad discretion of defense counsel to forego objections to testimony not disputed, particularly when the objectionable nature of the testimony dilutes the effectiveness of the ultimate fact sought thus to be proved to an experienced trial judge.

The heart of defendant's case was his claim that the schoolteacher repulsed his advances by striking at him with a crescent wrench she found on the floorboards of his car and that he, in the heat of anger and without premeditation, warded off the blows, seized the wrench from her and hit her on the head. The people's principal witness, the police officer to whom defendant confessed, testified that defendant admitted striking the woman a number of times on the head with a wrench "when she started to holler, [']you are not going to rape me,['] and when she hollered he stated, [']I knew I had to do something because I would be facing 15 more years in prison as a parole violator.[']" The police officer also testified that defendant later claimed the woman struck him first with the wrench and that he grabbed the wrench and hit her back. On the morning following his confession, defendant signed a statement written by him in which he repeated his latter version of the

facts and gave the statement to the prosecutor who, in turn, gave a copy of it to defense counsel about a month before trial.

Defendant did not testify in his own behalf. There was no way defense counsel could bolster the meager evidence of his client's favorable version of the assault without putting defendant on the stand or, somehow, having his written statement admitted in evidence. The prosecutor did not offer it and none of the people's witnesses could identify it for introduction in evidence. Defense counsel, apparently deeming it essential to the defense, thereupon called the prosecuting attorney to the stand and offered the statement in evidence through him. Defendant now claims that calling the prosecutor for this purpose was incompetence or worse on behalf of his counsel because the prosecutor was thereafter allowed by the court to testify at length concerning the circumstances of the defendant's admissions, the arraignment, and other events preceding the trial.

We cannot agree with defendant's characterization of his counsel's action. The testimony against defendant up to that point in the trial was overwhelming. Doubtless, counsel weighed the risks inherent in calling the prosecutor as a witness and concluded that nothing more could be lost. He was correct; nothing more remained but for a desperate, last minute effort to prove lack of premeditation. If every failure of proof, under circumstances such as these, demonstrates incompetence of counsel, then the bar of this State will indeed be inhibited from taking the calculated risks which still do sometimes, at least, pluck legal victory out of legal defeat.

Defendant's claim that counsel assigned to him by the court was unfaithful rests upon the fact that defense counsel disclosed to the prosecutor before trial that the court's jurisdiction to hear the case was questioned. Standing alone, as it does, defendant's

assertion of such disclosure evinces no infidelity whatever.

Defense counsel was a respected member of the Schoolcraft county bar, a lawyer of many years of practice, concerning whom defendant's charges of incompetence and unfaithfulness are unfounded.

The dispute over venue arises from the fact that after having confessed killing the schoolteacher at a place alongside a road in Schoolcraft county, defendant later recanted that portion of his confession and placed the scene of the crime just over the county line into Alger county. The people's proof of distance between the county line and the 2 alternatively admitted scenes of the crime was made by testimony of automobile speedometer measurements. From the county line to the place in Schoolcraft county where defendant first claimed he committed the fatal assault, was over 7 miles. From the county line to the place in Alger county where defendant now claims the assault occurred, was only .2 of a mile, well under 100 rods. No other testimony regarding these distances appears in the record. In whichever place the assault actually occurred, Schoolcraft county properly could prosecute defendant. CL 1948, § 762.3 (Stat Ann 1954 Rev § 28.846), provides, in part:

"Any offense committed on the boundary line of 2 counties, or within 100 rods of the dividing line between them, may be alleged in the indictment to have been committed, and may be prosecuted and punished in either county."

See *People v. Thompson*, 255 Mich 252. Defendant contends that subsequent provisions of that legislative enactment, giving to the attorney general of the State the authority to designate in which county a felony should be prosecuted where it is impossible to determine within which county it occurred, should

have been invoked. The factual record here disclosed does not justify reliance upon those provisions of the statute, for it is clear that accepting either of defendant's stories venue was properly laid in Schoolcraft county, either because the crime occurred there or because it occurred within 100 rods of the county line.

Defendant claims that the trial court committed prejudicial error in admitting evidence of his commission of subsequent unrelated crimes, over his counsel's objection. A police officer was allowed to testify that defendant admitted breaking and entering 4 different places subsequent to the homicide and before his apprehension by the police 4 days later. He testified that some of the goods defendant admitted taking from those places were found in defendant's car and elsewhere. We believe the trial court did err in overruling defense counsel's objections. From the time of *Lightfoot* v. *People,* 16 Mich 507, and *People* v. *Schweitzer,* 23 Mich 301, we have excluded proofs of other unrelated crimes unless they fall within the limited exceptions recognized by statute or our decisions. CL 1948, § 768.27 (Stat Ann 1954 Rev § 28.1050), permits the proof of other acts, including criminal acts, under certain circumstances in criminal cases, but it has no bearing on the admission of such evidence in the case at bar. The robberies defendant committed subsequent to the killing have no relationship to defendant's motive, intent, the absence of mistake or accident, or his scheme, plan or system in committing the killing. Similarly, the proofs admitted in this case do not fall within the limited exception recognized in *People* v. *Jackson,* 280 Mich 6, at pp 9 and 10, and in *People* v. *Wright,* 315 Mich 81. Had such evidence been admitted in a trial to a jury, we would not hesitate to reverse a verdict of guilt. However, trial here having been to the court without

a jury, and with due regard for the whole evidence of guilt disclosed by this record, we do not believe the verdict would have been different than it was had such testimony been excluded.

Finally, defendant claims reversible error was committed in receiving police officers' testimony of defendant's admissions made after arrest but before arraignment, relying upon *People* v. *Hamilton,* 359 Mich 410, and other authorities cited therein. Defendant's reliance upon *People* v. *Hamilton,* is misplaced. At no time during the trial did defendant object to the introduction in evidence of his admissions of guilt. Had there been timely objection at trial, we would be compelled to review and determine the claim here made, but the record before us discloses there was no objection to the admission of such testimony and, consequently, the trial court had no occasion to take proofs and to consider whether defendant's arrest and detention were illegal thereby subjecting his confessional statements made during such detention to the exclusionary rule announced in *People* v. *Hamilton.* Under these circumstances, there is nothing in this record from which we could make any proper determination of this issue, nor is there, of course, a ruling of the trial court to review.

Affirmed.

Dethmers, C. J., and Carr, Kelly, Black, Edwards, and Kavanagh, JJ., concurred.

Otis M. Smith, J., took no part in the decision of this case.