PEOPLE *v.* CONNORS

PEOPLE *v.* ADCOCK

1. ROBBERY—ASSAULT WITH INTENT TO ROB—APPEAL AND ERROR.
    Evidence was before the jury, which if believed, supported the verdict of assault with intent to rob and steal while being unarmed, where two arresting officers testified they observed defendants striking the victim and going through his pockets (MCLA § 758.88).

REFERENCES FOR POINTS IN HEADNOTES

[1] 46 Am Jur, Robbery §§ 14–21.
[2] 53 Am Jur, Trial § 848 *et seq.*
[3, 8, 9] 21 Am Jur 2d, Criminal Law §§ 95, 97, 222, 309–317.
[4] 21 Am Jur 2d, Criminal Law §§ 440–451.
[5–7] 21 Am Jur 2d, Criminal Law §§ 241–256.

2. CRIMINAL LAW—JURY—DIRECTED VERDICT.

>   The court, during the course of the jury's deliberations, may legitimately ask them whether they will be able to reach a verdict within a short time, and such an inquiry by the court is not equivalent to a direction of a guilty verdict.

3. CRIMINAL LAW—RIGHT TO RETAIN COUNSEL.

>   Defendants were not denied the right to retain private counsel where no appearance was filed by counsel other than appointed counsel, both defendants signed affidavits of indigency, and the attorney whom the defendants supposedly retained indicated that he was not going to represent them.

4. CRIMINAL LAW — PRELIMINARY EXAMINATION — STATUTORY TIME LIMIT.

>   Failure to comply with the statute which requires that preliminary examination be held within ten days of the arraignment is not *per se* reversible error, where defendants did not demand a speedy examination and did not show that they were prejudiced by the delay (MCLA § 766.4).

5. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO A SPEEDY TRIAL —EFFECT OF FAILURE TO DEMAND A SPEEDY TRIAL.

>   Defendants' claim, on appeal, that they were denied the right to a speedy trial is without merit where an eight-month delay occurred because a witness, an arresting officer, was on furlough in California and defendants failed to make a proper demand for speedy trial.

6. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO A SPEEDY TRIAL —DEMAND FOR A SPEEDY TRIAL.

>   A defendant desirous of exercising his right to a speedy trial must make proper demand upon the court for the prompt disposition of the criminal proceedings against him.

7. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO A SPEEDY TRIAL —STATES.

>   The Sixth Amendment right to a speedy trial is applicable to the states through the due process clause of the Fourteenth Amendment (US Const, Ams 6, 14).

8. CRIMINAL LAW—RIGHT TO COUNSEL—EFFECTIVE COUNSEL.

>   The constitutional right to counsel means at the least the right to the effective assistance of counsel; however, this neither means that counsel will be successful, nor does it mean that counsel will not commit a big mistake.

9. CRIMINAL LAW—RIGHT TO COUNSEL—EFFECTIVE COUNSEL.

    Defendants were not denied the effective assistance of counsel at trial even though the testimony against them was unshakeable, where counsel appeared with the defendants at the arraignment, the preliminary examination and the pre-trial conference, as well as at trial, counsel conferred with defendants about their case prior to trial, and counsel conducted the trial in a very able manner as evidenced by skillful cross-examination, well-taken questions and objections, and his summary of defendants' theory of the case.

Appeal from Recorder's Court of Detroit, Joseph A. Gillis, J. Submitted Division 1 June 10, 1970, at Detroit. (Docket Nos. 8,056, 8,312.) Decided October 1, 1970. Leave to appeal denied as to Connors December 16, 1970. 384 Mich 790.

Albert Connors and Buford Adcock were convicted of assault with intent to rob and steal being unarmed. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*John F. Potvin,* for defendant Albert Connors on appeal.

*John L. Belanger,* for defendant Buford Adcock on appeal.

Before: DANHOF, P. J., and V. J. BRENNAN and J. J. KELLEY, Jr.,* JJ.

V. J. BRENNAN, J. The defendants were convicted by a jury of assault with intent to rob and steal being unarmed. MCLA § 758.88 (Stat Ann 1963

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Rev § 28.283). Both were sentenced to serve from 8 to 15 years in prison.

The testimony consisted of the version of the incident as given by the two arresting officers and as given by the defendants. The officers said that they first saw the defendants crossing the street on either side of the complainant, Wilfred Lynch, apparently helping the intoxicated man to walk. When the complainant was steered into an alley, the officers got suspicious. They emerged from their scout car and entered the alley. Both testified that they saw the defendants hit and kick the complainant until he fell, and then rummage through his pockets. The officers arrested the defendants, but found no weapons in their possession.

Defendants claim that they were merely lending assistance to the complainant. Upon seeing Lynch in such an intoxicated state, they resolved to borrow some money in order to get him a room for the night. They said they were concerned that he might be "locked up" for vagrancy. Defendants' reason for taking Lynch down an alley was that they were going to borrow the money at the back door of a bar. The defendants said Lynch fell just as the police entered the alley, and they were arrested before they could help the man up.

At the trial, the complainant testified that he had never seen the defendants before. They said, however, that Lynch was a "friend of a friend" of theirs. When asked by the prosecutor who this friend was, defendant Connors said that the friend was a man named "Jim" with whom he shot billiards on occasion and that he did not know the man's last name or any other information about him.

The defendants raise six allegations of error, none of which require reversal.

The charge that the verdict is against the great weight of the evidence is frivolous. Each arresting officer testified that he observed the defendants striking Lynch and knocking him to the ground. Each also testified that they saw the defendants going through the pockets of the victim. Evidence was before the jury which, if believed, supported the verdict. In such cases it is our function to affirm the verdict. *People* v. *Bratton* (1969), 20 Mich App 523.

Next, defendants complain of the judge's inquiring of the jury, "Is there any chance of reaching a verdict in the next few minutes?" At 5:10 p.m., the court asked the above-stated question in order to ascertain whether to allow the jury to continue deliberations or to adjourn for the day. The foreman indicated that the jury was close to a verdict, and the judge accordingly sent the jury back to deliberate. At 5:20 p.m. a verdict of guilty was returned. Contrary to defendants' theory, the judge's question was not equivalent to a direction of a guilty verdict: the jury could have been close to a verdict of innocence, as well as one of guilt. Such is a legitimate query on the part of the trial court. *People* v. *Maxwell* (1966), 3 Mich App 264.

Thirdly, the record clearly does not establish that defendants were denied their right to retain private counsel. No appearance was filed by any counsel other than the one appointed. Both defendants signed affidavits of indigency. To believe they had funds to retain private counsel would be to infer perjury on the part of the defendants. Also, the trial court was in communication with the attorney whom the defendants' supposedly retained and was informed that he was not going to represent them. There is no evidence that defendants were deprived of their right to retain private counsel.

Fourth, the preliminary examination was scheduled for November 22, 1958, but was adjourned to November 27. While this adjournment has resulted in a technical violation of MCLA § 766.4 (Stat Ann 1954 Rev § 28.922) which requires the examination to be held within ten days of the arraignment, it is not fatal. Delay, *per se,* is not reversible error. *People* v. *Linscott* (1968), 14 Mich App 334. Since defendants did not make a demand for a speedy examination nor can they now show any prejudice arising from the delay, we find no error requiring reversal. *People* v. *Wickham* (1968), 13 Mich App 650.

Fifth, defendants' claim that they were denied the right to a speedy trial is without merit. The facts show that the commencement of the trial was delayed approximately eight months primarily because one of the witnesses, an arresting officer, was on furlough in California. At no time did defendants make a demand for a speedy trial. What was said in *People* v. *Frazier* (1969), 16 Mich App 38, 41, 42, is dispositive of this issue:

"Under Michigan law, a defendant desirous of exercising his right to a speedy trial must make a proper demand upon the court. *People* v. *Miklovich* (1965), 375 Mich 536; *People* v. *Duncan* (1964), 373 Mich 650; *People* v. *Foster* (1933), 261 Mich 247; *People* v. *Nawrocki* (1967), 6 Mich App 46. The record does not contain a demand or any other recorded attempt by defendant to obtain his right to a prompt disposition of the criminal accusation against him.

\*          \*          \*

"The Michigan demand requirement is not inconsistent with *Klopfer* v. *North Carolina* (1967), 386 US 213 (87 S Ct 988, 18 L Ed 2d 1), which held the 6th Amendment right to a speedy trial applicable to the states through the due process clause of the

14th Amendment. The right to a speedy trial is the right to have the prosecution of a criminal accusation within a reasonable time. Considering the delays and docket congestion in the courts and the absence of any recorded demand for a speedy disposition of his case, we do not believe the 10-month wait between arrest and trial violated defendant's right to a speedy trial."

Finally, defendants allege that the court-appointed trial attorney, as differentiated from appellate counsel, deprived them of effective representation. Before discussing this contention, a few preliminary comments are in order. It was earlier recognized that the right to counsel means at least the right to the "effective assistance of counsel." *Powell* v. *Alabama* (1932), 287 US 45 (53 S Ct 55, 77 L Ed 158). However, effective assistance does not mean successful assistance. *Mitchell* v. *United States* (1958), 104 App DC 57 (259 F2d 787). Nor does it mean that counsel will not make a big mistake. *Brubaker* v. *Dickson* (CA9, 1962), 310 F2d 30.

Defendants' contention that it was incompetent to put them on the stand knowing they had such bad records is without merit. The testimony against the defendants at that point was overwhelming despite very able cross-examination by trial counsel. Both officers testified as to the crime, and each was unshakeable in his eyewitness testimony. Doubtless, counsel weighed the risks inherent in calling the defendants to the stand and concluded that nothing more could be lost. He was correct; not one shred of plausible evidence pointed to the innocence of the defendants.

"If every failure of proof, under circumstances such as these, demonstrates incompetence of counsel, then the bar of this State will indeed be inhibited from taking the calculated risks which still do some-

times, at least, pluck legal victory out of legal defeat." *People* v. *Lundberg* (1961), 364 Mich 596, 601.

The appointed counsel was present with defendants at the arraignment, the preliminary exam, and the pre-trial conference. He spoke to them about the case prior to trial. Most importantly, counsel handled the trial in a very able manner: his closing statement summarized defendants' theory of the case; his cross-examination was skillful; and his questions and objections were well taken. Counsel for defendants chose a reasonable course in light of the facts and provided the defendants with effective assistance.

Affirmed.

All concurred.