PEOPLE v JAMISON

1. Cʀɪᴍɪɴᴀʟ Lᴀᴡ—Eᴠɪᴅᴇɴᴄᴇ—Rᴇʙᴜᴛᴛᴀʟ—Oᴛʜᴇʀ Cʀɪᴍᴇs—Iᴍᴘᴇᴀᴄʜ-
     ᴍᴇɴᴛ.

    Admission of testimony that a gun was stolen elicited during
       rebuttal testimony by a police officer in order to disprove a
       statement by the defendant that he had purchased the gun,
       while it is evidence of another crime, was not reversible error
       where it was not part of the case in chief and was not deliber-
       ately injected into the case during cross-examination of the
       defendant, and where the defendant made no objection to the
       testimony, even though as a general rule the prosecution
       cannot show the commission of another unrelated offense by a
       defendant.

2. Cʀɪᴍɪɴᴀʟ Lᴀᴡ—Dᴇꜰᴇɴᴅᴀɴᴛ Tᴇsᴛɪꜰʏɪɴɢ—Sᴇʟꜰ-Iɴᴄʀɪᴍɪɴᴀᴛɪᴏɴ—
     Pʀᴏsᴇᴄᴜᴛᴏʀ's Rᴇᴍᴀʀᴋs.

    A defendant who takes the stand has waived his right not to
       incriminate himself and the prosecution may comment on the
       defendant's earlier silence without resulting error; reversible
       error did not occur in a case where testimony regarding the
       defendant's silence in refusing to talk to police after a lineup
       was first elicited by his attorney, there was no objection by the
       defendant to the later questioning and comment regarding it by
       the prosecution, and good reason was given for the silence.

3. Cʀɪᴍɪɴᴀʟ Lᴀᴡ—Rᴇs Gᴇsᴛᴀᴇ Wɪᴛɴᴇssᴇs—Wᴀɪᴠᴇʀ—Pʀᴏsᴇᴄᴜᴛᴏʀ's
     Rᴇᴍᴀʀᴋs—Pʀᴇsᴇʀᴠɪɴɢ Qᴜᴇsᴛɪᴏɴ.

    Comment by the prosecutor in his closing argument on the fact
       that the defendant waived the calling of a res gestae witness
       did not result in reversible error where defense counsel had
       offered to waive the calling of the witness, the defendant
       testified that he did not want the witness to testify, he had
       vigorously opposed the prosecution's request for a bench war-

Rᴇꜰᴇʀᴇɴᴄᴇs ꜰᴏʀ Pᴏɪɴᴛs ɪɴ Hᴇᴀᴅɴᴏᴛᴇs
[1] 29 Am Jur 2d, Evidence §§ 320, 321, 333.
[2] 21 Am Jur 2d, Criminal Law §§ 349–354, 360.
[3] 21 Am Jur 2d, Criminal Law § 217.
[4] 29 Am Jur 2d, Evidence § 327.

rant for that witness, and the issue was not preserved by timely objection.

4. Criminal Law—Impeachment—Prior Convictions—Burden of Proof.

    A defendant who offers no court records in support of his argument that the use of information pertaining to prior convictions for impeachment purposes is reversible error because some of those convictions may have been obtained unconstitutionally has failed to establish merit in his claim.

Appeal from Washtenaw, Ross W. Campbell, J. Submitted Division 2 June 19, 1973, at Lansing. (Docket No. 14856.) Decided August 29, 1973.

Harvey J. Jamison was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *John F. Salan,* Senior Assistant Prosecuting Attorney, for the people.

*Judith K. Munger,* Assistant State Appellate Defender, for defendant.

Before: T. M. Burns, P. J., and McGregor and Van Valkenburg,* JJ.

McGregor, J. Defendant was jury convicted of armed robbery, MCLA 750.529; MSA 28.797, and sentenced to a term of 20 to 40 years in prison.

Testimony at trial indicated that, on February 7, 1972, one McKee was alone in the Salvation Army Record Shop at about 1:10 p.m.; McKee was an employee. Defendant entered the shop armed with a pistol, and told McKee to give him the money from the cash register, which McKee did. Defend-

_____
* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ant left and McKee immediately telephoned the
police. McKee gave a detailed description of the
robber to the first officer on the scene and two
hours later identified the defendant out of a six- or
seven-man lineup at the police station. The public
defender was present at the lineup.

When cross-examined, McKee denied knowing a
man by the name of Kayboy, and stated he had
not told his employer or the police that there was
another person present at the time of the robbery.

Several police officers testified concerning their
convergence at the area where the suspect was
believed to be, taking the defendant into custody,
and searching for and finding a loaded pistol in a
trash receptacle nearby. Testimony was given re-
garding the *Miranda* warnings and the lineup;
cross-examination of this officer also established
that no evidence had been obtained as to the
presence of another person during the robbery.
This witness testified that McKee told him that
after defendant left the store, a man opened the
door, and when McKee asked him if he had seen
the fellow who had just left, the man answered
that he had, but did not want to get involved, and
left. McKee told this witness that the man who
had briefly entered the store and left was white
and looked like a student. The officer testified that
there was no way to find this person, as McKee did
not know him. Other witnesses identified exhibits
and gave expert testimony.

Defendant testified that he met a fellow called
Kayboy at a bar between 12:00 and 12:30 on
February 7, 1972; after some conversation and a
drink, they left the bar together and walked to the
record shop. He testified further that the man
called Kayboy went into the shop first, and when
defendant entered the shop, McKee and Kayboy

were arguing. Defendant asserted that when he was in the store he saw McKee hand money from the cash register to Kayboy. Also, he testified that he and Kayboy left the shop together, but that Kayboy went back to the shop for a few minutes. Shortly after, Kayboy caught up with the defendant and told him that McKee had called the police and reported a robbery; defendant further testified that he had a loaded gun in his possession at the time and didn't want to be caught with it, so he put it in the trash can. He also testified that he threw his hat away. Under further questioning by defense counsel, defendant stated that he had been convicted previously of robbery armed and robbery unarmed and various misdemeanors, including larceny, that he had pled guilty to all of them, and had never gone to trial before.

Upon cross-examination, defendant admitted convictions in 1943 of simple larceny and larceny in a building, in 1944 of larceny in a building and concealing stolen property, in 1945 of disorderly fighting, in 1946 of robbery unarmed, carrying a concealed weapon, and army desertion, and in 1950 of robbery armed and unlawfully driving away an automobile. Defendant also testified that he had bought the gun in 1971, did not remember where, and that he thought the gun was "hot". Defendant further admitted that he was a user of cocaine and heroin, that his habit cost him about $25 per day, and that he was not working steadily.

Upon redirect examination, defendant testified that he carried the gun for protection from the enemies he had made while serving a sentence in Jackson prison.

After the defense rested, the prosecution recalled a police officer who testified that the gun had been stolen in a breaking and entering in Ann

Arbor on November 11, 1971. The prosecution
again rested, and the court recessed for lunch.
After this recess, the prosecution asked to reopen
the case because of additional information ob-
tained during the recess. No objection was made
by the defense, and the court granted leave to
reopen.

McKee was recalled for testimony, in which he
admitted that he had not told the truth earlier
when he said he was alone in the shop at the time
of the robbery; he testified that a person whom he
knew, named Dennis Keppler, came into the shop
a few steps before the defendant, that they ex-
changed greetings, and then the defendant entered
the shop and demanded the money. McKee testi-
fied that he did not know at the time whether the
two were together, but that after defendant took
the store's money from McKee, he also took $20
from Keppler. After the defendant left and McKee
telephoned the police, he asked Keppler to be a
witness; Keppler refused, saying that he had some
parking tickets and did not want to get involved.
After Keppler left, McKee decided not to mention
anything about him. McKee stated that he now
believed that Keppler was setting him up for the
robbery, although at the time of the robbery he
did not think so. He further stated that the first
time he had mentioned the presence of this third
person during the robbery to anyone was the day
of his testimony, during the noon recess.

At the close of McKee's testimony, the prosecu-
tion stated that, with this evidence of an accom-
plice or res gestae witness to the crime, it became
the people's duty to attempt to produce this per-
son, and asked the court to issue a bench warrant
for Dennis Keppler. Defense countered that, con-
sidering the length of time already spent in await-

ing trial, the defendant would waive the requirement of producing Keppler, since previous attempts to find Keppler had been unsuccessful. The court refused to accept the defendant's waiver, and declared a recess for discussion of this new witness. When court was reconvened, defense counsel stated that it remained the position of the defense that it was in the defendant's best interest to waive production of the res gestae witness, whereupon the court took the motion under advisement.

Defendant again took the stand and under cross-examination, opined that he did not believe Keppler would tell the truth if he were found, and that the defendant did not want Keppler to testify.

In the absence of the jury, the court questioned the defendant, and after obtaining no change in his statements, the court denied the prosecution's motion to indorse and subpoena Keppler.

After defendant's conviction and sentencing, the State Appellate Defender moved for disclosure and production of defendant's presentence report, alleging that appellate counsel believed the sentence was based on constitutionally invalid felony convictions, in violation of *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972). This motion was denied, but the trial court stated in its written opinion that, without setting any precedent, defense counsel would be permitted upon informal request and by appointment to examine the presentence report personally at the court chambers.

Defendant first argues on appeal that it was reversible error to call the police officer as a rebuttal witness and to question him about the gun, which the officer stated had been stolen, but which the defendant testified that he had purchased, since this testimony tended to show the

commission of the crime of stealing a gun, not armed robbery, the crime charged.

The prosecution contends that it has the right and duty to impeach defendant's testimony, and that their rebuttal witness was attempting to verify the untruth of defendant's testimony, not the commission of another crime.

Defendant's testimony as to the purchase of the gun in August, 1971, was not true if the police officer's rebuttal testimony that the gun was stolen in Ann Arbor in November, 1971 was believed. No objection was made by the defense to this rebuttal testimony. Questioning of the police officer by defense counsel established that the officer did not know who had stolen the gun.

As a general rule, the prosecution cannot show the commission of another unrelated offense by the defendant. *People v Lundberg,* 364 Mich 596; 111 NW2d 809 (1961). The evidence of another crime was not part of the case in chief, nor was it deliberately injected into the case during cross-examination of the defendant. This evidence was elicited during rebuttal in order to disprove a statement by the defendant. It is noted that the trial court observed that defendant made no objection to this testimony. Under such circumstances, the gun testimony was not reversible error.

Secondly, defendant claims he was denied his right to remain silent by cross-examination which elicited that, before the lineup, he had told the police officer that he would talk to him but did not do so thereafter, and by comment upon this silence in the prosecutor's closing argument.

There is a difference in the authority on this issue. Once the defendant takes the stand, he has waived his right not to incriminate himself, and the prosecution may comment on defendant's ear-

lier silence without committing error. *People v Bell*, 32 Mich App 375; 188 NW2d 909 (1971), *leave den; People v Russell*, 27 Mich App 654; 183 NW2d 845 (1970). Since defendant's silence was first elicited by his attorney, there was no objection by defendant to the later questioning and comment regarding it by the prosecution, and good reason was given for the silence, reversible error did not occur in this case.

Defendant next contends that it was reversible error for the prosecutor to comment in closing argument on the fact that defendant waived the calling of the res gestae witness, Dennis Keppler.

Considering the defendant's vigorous opposition to the prosecution's request for a bench warrant for Keppler and the fact that the issue was not preserved by timely objection, the people's comment on it does not appear to be reversible error. *People v Williams*, 42 Mich App 278; 201 NW2d 286(1972).

Defendant further contends that the use of information pertaining to some of his prior convictions for impeachment purposes was reversible, because those convictions may have been obtained unconstitutionally, and cites as support *Loper v Beto*, 405 US 473, 92 S Ct 1014; 31 L Ed 2d 374 (1972). No certified court records are offered in support of this argument. Even if this case involved felonies or misdemeanors resulting in imprisonment, the defendant has failed to sustain his burden of proof.

Defendant's other claims of error have been considered and found either not to have been preserved for appeal, or to be without sufficient merit to warrant discussion.

Conviction affirmed.

All concurred.